**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RICHARD SMITH, | : | CIVIL ACTION NO. 10-468 (MLC) |
|  | : |  |
| Plaintiff, | : | **MEMORANDUM OPINION** |
|  | : |  |
| v. | : |  |
|  | : |  |
| COMMISSIONER OF SOCIAL | : |  |
| SECURITY, | : |  |
|  | : |  |
| Defendant. | : |  |

**COOPER, District Judge**

Plaintiff, Richard Smith, applies for judicial review of the final decision of Defendant, Commissioner of the Social Security Administration ("Commissioner"), dated November 25, 2009, denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). (Dkt. entry no. 11, Pl. Br.) The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court, for the reasons stated herein, will affirm the Commissioner's decision.

**BACKGROUND**

Plaintiff filed a claim for DIB and SSI on November 4, 2004, alleging he became unable to work beginning on February 1, 1999. (Admin. R. ("A.R.") at 22.) The Commissioner denied the claim initially on May 12, 2005. (Id. at 46-49.) Plaintiff filed a request for reconsideration on May 26, 2005. (Id. at 45.) The Commissioner denied the claim again upon reconsideration on

August 19, 2005.  (<u>Id.</u> at 42-44.)  Plaintiff appealed, and Administrative Law Judge John J. Madden, Jr. ("ALJ") conducted a hearing on December 6, 2007, and a supplemental hearing on December 14, 2007, in which Plaintiff was represented by counsel. (<u>Id.</u> at 22, 584-663, 664-700.)

The ALJ issued a decision on January 16, 2008, finding, <u>inter alia</u>, that (1) Plaintiff "last met the insured status requirements of the Social Security Act through June 30, 2004," (2) Plaintiff "has not engaged in substantial gainful activity since February 1, 1999, the alleged onset date," (3) the medical evidence established that Plaintiff had "the following severe impairments: bipolar disorder and marijuana abuse," (4) Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," (5) Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels but with nonexertional limitations. [Plaintiff] is able to understand and remember simple to semi-skilled instructions, but will have difficulty with more detailed instructions; he can maintain sufficient concentration and attention on a consistent basis, but will have difficulty with more detailed tasks; he can complete a normal work weekday and workweek; he would do best with only occasional interaction with the general public and he would not be a good candidate for close

2

cooperative work with coworkers; and he would do better in a job where he can work independently of others, but he can tolerate working in the same workspace with them," (6) Plaintiff "is capable of performing past relevant work as a newspaper deliver [sic]," (7) "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," and (8) Plaintiff "has not been under a disability, as defined in the Social Security Act, from February 1, 1999 through the date of this decision." (Id. at 24-36.)

The ALJ concluded that Plaintiff was not entitled to DIB or SSI. (Id. at 36-7.)  Plaintiff requested review of the ALJ's decision by the Social Security Administration Appeals Council ("Appeals Council") on March 17, 2008. (Id. at 17.)  The Appeals Council acknowledged receipt of additional evidence noting an inaccurate statement by the ALJ rejecting an alleged condition, but found that the information did not warrant changing the ALJ's decision, and so denied Plaintiff's request for review on November 25, 2009. (Id. at 8-11.)  Plaintiff applied for review here on January 26, 2010. (Dkt. entry no. 1.)

## DISCUSSION

### I.  Standard Of Review

The Court may review a "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g). The Court may affirm, modify, or reverse the Commissioner's

decision with or without remanding the case for a rehearing.  <u>Id.</u>
This judicial review, however, is limited.  The Court must affirm
the Commissioner's decision regarding disability benefits if an
examination of the record reveals that the findings of fact are
supported by substantial evidence.  <u>Id.</u>; <u>Reefer v. Barnhart</u>, 326
F.3d 376, 379 (3d Cir. 2003).  "Substantial evidence" in the
context of a Social Security matter is defined as less than a
preponderance of the evidence but "more than a mere scintilla,"
<u>i.e.</u>, such evidence "as a reasonable mind might accept as
adequate to support a conclusion." <u>Richardson v. Perales</u>, 402
U.S. 389, 401 (1971) (quotation and citations omitted).  This
standard "is deferential and includes deference to inferences
drawn from the facts if they, in turn, are supported by
substantial evidence." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181
F.3d 429, 431 (3d Cir. 1999).

Despite the deference given to administrative decisions
under this standard, the Court "retain[s] a responsibility to
scrutinize the entire record and to reverse or remand if the . .
. decision is not supported by substantial evidence." <u>Smith v.
Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981).  Furthermore,

> [a] single piece of evidence will not satisfy the
> substantiality test if the [Commissioner] ignores, or
> fails to resolve, a conflict created by countervailing
> evidence.  Nor is evidence substantial if it is
> overwhelmed by other evidence - particularly certain
> types of evidence (e.g., that offered by treating
> physicians) - or if it really constitutes not evidence
> but mere conclusion.

4

Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). "That the record contains evidence which could have supported a different conclusion does not undermine" the Commissioner's decision provided that the record contains substantial evidence supporting that decision. Rivera v. Shalala, No. 94-2740, 1995 WL 495944, at *3 (D.N.J. July 26, 1995). The ALJ is required, however, to address and reconcile medical evidence that would support a contrary conclusion. Schaudeck, 181 F.3d at 435.

## II. Determining Eligibility For Disability Insurance Benefits

The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is determined to be disabled if the individual's "physical or mental impairment or impairments are of such severity that [the individual] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

An ALJ employs a five-step process in determining whether a claimant is "disabled." In the first step, the ALJ determines whether the claimant is currently engaged in "substantial gainful

5

activity." 20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is so
engaged, the ALJ will find that the claimant is not disabled and
deny the application for disability benefits.  Id. § 404.1520(b).
If the claimant is not employed, the ALJ will consider the
medical severity and duration of the claimant's impairment or
combination of impairments in the second step.  Id. §
404.1520(a)(4)(ii).  A "severe impairment" is one that
significantly limits the claimant's physical or mental ability to
do basic work activities, including, inter alia, (1) sitting,
lifting, and speaking, (2) responding appropriately to
supervision and co-workers, and (3) understanding, carrying out,
and remembering instructions.  Id. §§ 404.1521(a)-(b),
416.921(a)-(b).  A claimant not meeting this requirement is not
disabled.  Id. § 404.1520(c).  Thus, the second step requires a
threshold-level demonstration of severe impairment without
consideration of the claimant's age, education, and work
experience.  Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

    If the claimant shows a severe impairment, the ALJ then
moves to the third step to determine whether the impairment is
listed in section 20, part 404, subpart P, appendix 1 of the CFR.
20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment meets or
equals a listed impairment, then the claimant is presumed to be
disabled, and the evaluation ends at this stage.  Id. §
404.1520(d).  If the impairment does not meet or equal a listed

impairment, then the ALJ proceeds to step four.  Id. §
404.1520(a)(4).

The ALJ must determine at step four whether the impairment
prevents the claimant from returning to the work that the
claimant performed in the past.  Id. § 404.1520(a)(4)(iv).  The
claimant, if able to resume the previous work, will not be
considered disabled.  Id.  If the claimant cannot resume previous
work, the ALJ then moves to step five and considers the
claimant's ability to perform other work that is available in the
national economy.  Id. §§ 404.1520(a)(4)(v), 404.1520(e).  This
inquiry requires the ALJ to consider the claimant's residual
functional capacity ("RFC"), age, education, and past work
experience.  Id.  A claimant will be found disabled if the
claimant is unable to adjust to any other work in the national
economy.  Id. § 404.1520(g).

The claimant has the initial burden of production for the
first four steps of the evaluation process.  Plummer v. Apfel,
186 F.3d 422, 428 (3d Cir. 1999).  Once a claimant meets this
burden, the burden shifts to the Commissioner in step five to
show that the claimant has the transferable skills that would
allow him or her to engage in alternative substantial gainful
employment.  Id.

### III. Analysis of Plaintiff's Claim

Plaintiff argues the ALJ's determination that he was not disabled after February 1, 1999, is not supported by substantial evidence.  (Pl. Br. at 15.)  Specifically, Plaintiff argues that the ALJ erred by failing to properly (1) consider Plaintiff's reactions to stress and in not determining the specific sources of stress in Plaintiff's past relevant work, (2) determine Plaintiff's RFC, (3) evaluate and weigh the medical evidence, and (4) evaluate Plaintiff's credibility.  (Id. at 9-29.)  The Commissioner argues, in contrast, that "plaintiff's impairments did not prevent him from performing his past work during the relevant period."  (Dkt. entry no. 12, Def. Br. at 1.)

In determining whether a claimant is entitled to disability benefits, the ALJ "must consider all evidence and give some reason for discounting the evidence [the ALJ] rejects."  Plummer, 186 F.3d at 429.  The ALJ need not engage in a comprehensive analysis when explaining why probative evidence is being rejected.  Cotter v. Harris, 650 F.2d 481, 482 (3d Cir. 1981).  Rather, a short sentence or paragraph explaining the basis upon which the ALJ is rejecting evidence will suffice.  Id.  The ALJ is not required to reference each and every treatment notation with particularity in the analysis, but must "consider and evaluate the medical evidence in the record consistent with [the] responsibilities under the regulations and case law."  Fargnoli

8

v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).  An ALJ "may choose whom to credit" when a conflict in the evidence exists, but may not "reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429 (quotation and citation omitted).  This policy allows the Court to properly review the ALJ's decision pursuant to Section 405(g) to determine whether the decision is supported by substantial evidence.  Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  The Court, without an indication as to what evidence the ALJ considered or rejected, "cannot tell if significant probative evidence was credited or simply ignored." Id.  Although the ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis," the ALJ's findings must provide "sufficient development of the record and explanation of findings to permit meaningful review."  Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).

The Court need not review the ALJ's decision at step one of the analysis, where the ALJ found that Plaintiff has not engaged in work activity after his alleged disability onset date. (A.R. at 24.)  Plaintiff does not challenge the ALJ's finding at step two that he suffered from two severe impairments, bipolar disorder and marijuana abuse.  (Id.)  Plaintiff also does not challenge the ALJ's finding at step three that he did not automatically qualify as disabled under any "listed impairment,"

specifically Listing 12.04, Affective Disorders, and Listing
12.09, Substance Addiction Disorders.  (Id. at 24-25; Pl. Br. at
2.)

     The Court also need not consider step five of the analysis
because the Court finds that the ALJ's step four determination –
that Plaintiff could return to work and resume his previous job –
is supported by substantial evidence.  (See A.R. at 35.)  The
Court, furthermore, need not address the uncontested conclusion
by the ALJ that the record does not support a finding of severe
impairment in Plaintiff's claims of low back pain and epilepsy.
(See id. at 33.)  The Court will address the ALJ's conclusions at
step four of the sequential analysis.

     Plaintiff contends that the ALJ erred in determining his RFC
and in determining that he could return to his past relevant work
as a newspaper delivery person.  (Pl. Br. at 9-29.)  The ALJ
found that Plaintiff "has the residual functional capacity to
perform a full range of work at all exertional levels but with
nonexertional limitations.  [Plaintiff] is able to understand and
remember simple to semi-skilled instructions, but will have
difficulty with more detailed instructions; he can maintain
sufficient concentration and attention on a consistent basis, but
will have difficulty with more detailed tasks; he can complete a
normal work weekday and workweek; he would do best with only
occasional interaction with the general public and he would not

10

be a good candidate for close cooperative work with coworkers; and he would do better in a job where he can work independently of others, but he can tolerate working in the same workspace with them." (A.R. at 26.) Plaintiff raises several objections to the ALJ's RFC determination and to the determination that he could return to work as a newspaper delivery person, which the Court addresses below.

### A. Sufficiency of the ALJ's Determination of Plaintiff's RFC

Plaintiff sets forth many reasons why he believes the ALJ erred in determining his RFC. (Pl. Br. at 15.) First, Plaintiff argues that the ALJ failed to provide a "function by function" assessment of his abilities. (Id. at 18.) Second, Plaintiff argues the ALJ improperly rejected the opinion of Dr. Ryan Scott. (Id. at 25.) Third, Plaintiff contends that the ALJ's failure to discuss Plaintiff's Global Assessment of Functions ("GAF") scores represents a failure to consider all relevant medical evidence. (Id. at 19-20.) Fourth, Plaintiff alleges the ALJ improperly evaluated his credibility. (Id. at 27-29.) Fifth, Plaintiff contends that his RFC should have included reference to the effect of stress on his ability to function. (Id. at 11.)

The Court disagrees. At step four and step five, the ALJ "must determine whether the claimant retains the ability to perform either his former work or some less demanding employment." Pearson v. Barnhart, 380 F.Supp.2d 496, 504 (D.N.J.

11

2005) (quotation and citation omitted).  An RFC is defined as what an individual "can still do despite [his or her] limitations. . . . If [Plaintiff] can meet his or her past work demands, then he or she is not disabled within the meaning of the Act." Id. (quotation and citation omitted).  Here, the ALJ adequately explained the basis for the RFC to perform a full range of work at all exertional levels but with nonexertional limitations.  (See A.R. at 26.)  The Court will address each of Plaintiff's claims in turn.

Plaintiff first claims that the ALJ failed to provide a "function by function" assessment of the Plaintiff's abilities. (Id. at 18.)  The RFC must "identify the individual's functional limitations and restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945." SSR 96-8p, 1996 WL 374184 (July 2, 1996).  The ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.  Here, the ALJ did perform the required analysis and detailed his findings in his decision.  He found no physical impairments, a finding Plaintiff does not contest, and thus put "a full range of work at all exertional levels" into the RFC. (A.R. at 26; see 20 C.F.R. § 404.1545(b), § 416.945(b).)  The ALJ also properly took into account Plaintiff's mental impairments,

12

"assess[ing] the nature and extent of [Plaintiff's] mental limitations and restrictions."  20 C.F.R. § 404.1545(c)-(d); 20 C.F.R. § 416.945(c)-(d).  Based on a full review of the record of Plaintiff's psychiatric visits, the ALJ concluded that the "overwhelming evidence . . . shows that the claimant's bipolar condition is controlled with medication, and that he does not persistently manifest bipolar related symptoms" and that "the claimant engages in activities that require decision making abilities beyond simple repetitive tasks."  (A.R. at 32.) Moreover, the ALJ did list certain nonexertional limitations in Plaintiff's RFC, which take into account Plaintiff's mental limitations: "[Plaintiff] is limited in performing more detailed tasks; he should have only occasional interaction with the general public; and he should not work in close cooperative work with coworkers."  (Id.)

Plaintiff next claims that the ALJ impermissibly substituted his own opinion for that of the mental health professionals, and that he erred in rejecting the medical opinion of Dr. Scott. (Pl. Br. at 24-26.)

When there is conflicting objective evidence in the record, the ALJ must decide which evidence is more persuasive.  In making this determination, the ALJ may not make speculative inferences from medical reports and may not interject his own medical analysis.  See, e.g., Ferguson v. Schweiker, 765 F.2d 31, 37 (3d

13

Cir. 1985); Califano, 637 F.2d at 972.  The ALJ may, however, consider all of the relevant medical evidence, decide which evidence to credit, and explain why he chose to favor one medical opinion over another.  See Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505-06 (3d Cir. 2009).

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"  Plummer, 186 F.3d at 429 (internal citations omitted).[1]  Additionally, "[i]n considering a claim for disability benefits, greater weight should be given to the findings of a treating physician than to a physician who has examined the claimant as a consultant."  Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir. 1994).  When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993).

---

[1]  A treating source is a "physician, psychologist, or other acceptable medical source" who provides a patient with "medical treatment or evaluation," and has an "ongoing treatment relationship" with the patient.  20 C.F.R. § 416.902.  A medical source may be considered a treating source where the claimant sees the source "with a frequency consistent with accepted medical practice for the type of treatment . . . required for [the claimant's] condition(s)."  Id.

The ALJ here noted Plaintiff's period of stability and his doctors' observations of his decent mood and "high-functioning" bi-polarity.  (See, e.g., A.R. at 28-29.)  He considered the treatment notes of Drs. Leyva-Yapur, Sprague, Knee, and Scott. He found that Dr. Scott had not attributed his recommended limitations to "a medically determinable impairment" whereas the other continuous treatment records indicated Plaintiff's condition was controllable.  (Id. at 32.)  He based his rejection of Dr. Scott's opinion over the other treating psychiatrists at the United States Department of Veterans Affairs Medical Center ("VA") because "Dr. Scott examined the claimant only once, in comparison with the claimant's treating psychiatrists who evaluated him on several occasions over the course of this adjudicatory period."  (Id.)  Thus, the ALJ provided adequate reasons for rejecting Dr. Scott's opinion.

Plaintiff further alleges "the treating mental health professionals found Plaintiff to have a severe non-exertional impairment leading to serious limitations."  (Pl. Br. at 25.) However, as the ALJ stated, "the claimant's treating psychiatrists at the VA, Dr. Leyva-Yapur, Dr. Sprague, and Dr. Knee, have not suggested any marked deficits in functioning related to his bipolar condition."  (A.R. at 32.)  Though Plaintiff contests this statement (Pl. Br. at 25), he does not cite to any descriptions of serious work limitations in the

15

record, beyond citing Dr. Scott, whose opinion the ALJ
permissibly rejected.

Plaintiff next contends that the ALJ erred by not discussing
all of Plaintiff's GAF scores and that such an omission is
grounds for reversal.  (Pl. Br. at 19.)[2]  A GAF score of 51-60
indicates moderate impairment in social or occupational
functioning.  Cherry v. Barnhart, 29 Fed.Appx. 898, 899 (3d Cir.
2002) (citing American Psychiatric Association, Diagnostic and
Statistical Manual of Mental Disorders (4th ed. 2000) ("DSM-
IV")).  A GAF score of 41 to 50 indicates the patient has
"serious symptoms (e.g., suicidal ideation, severe obsessional
rituals, frequent shoplifting OR any serious impairment in
social, occupational, or school functioning (e.g., no friends,
unable to keep a job.)"  Gilroy v. Astrue, 351 Fed.Appx. 714, 715
(3d Cir. 2009) (citing DSM-IV).  However, "A GAF score does not
have a direct correlation to the severity requirements of the
Social Security mental disorder listings."  Id. (citing 66 Fed.
Reg. 50764-5 (2000)).  Under certain circumstances "a GAF score
can be considered evidence of a disability."  Fasciano v. Comm'r
of Soc. Sec., No. 08-802, 2009 U.S. Dist. LEXIS 25853, at *3
(W.D. Pa. Mar. 23, 2009).  But "the ALJ's failure to discuss the

---

[2]  The GAF is a numeric scale (0 through 100) that assesses
"how well an individual can function according to psychological,
social, and occupational parameters."  Dugan v. Astrue, No. 07-
1639, 2008 U.S. Dist. LEXIS 79151, at *17 n.8 (W.D. Pa. Oct. 7,
2008).

claimant's GAF scores, standing alone, is not a basis for remand." Power v. Astrue, No. 08-147, 2009 U.S. Dist. LEXIS 19147, at *28 (W.D. Pa. Mar. 5, 2009).

Though "numerous district courts in this Circuit, particularly in the Eastern District of Pennsylvania," have held that remand is necessary where an ALJ fails to discuss GAF scores, the Court will follow Gilroy, which does not require remand in this situation.  There the ALJ determined the claimant had bipolar disorder and "'moderate' limitations with respect to maintaining social functioning and with respect to maintaining concentration, persistence, and pace" but did not discuss the GAF score.  Gilroy, 351 Fed.Appx. at 716.  Moreover, the doctor who gave the GAF rating did not "express any opinions regarding specific limitations" or otherwise explain "the basis for his GAF rating."  Id.

The ALJ here similarly found bipolar disorder and "moderate" limitations on social functioning and maintaining concentration, persistence, or pace.  (A.R. at 24-25.)  He did not discuss the claimant's GAF scores, but he did refer extensively to the other observations in the psychiatrists' reports.  When Plaintiff was taking his medication, abstaining from substance abuse, and otherwise in compliance with his treatment program, he was stable and better able to function. (A.R. at 32.)  However, as the ALJ noted, there were long periods where Plaintiff refrained from

17

taking said medication and "preferr[ed] to self medicate with THC." (A.R. at 494.) Plaintiff's GAF scores generally track this progression - when Plaintiff followed his prescribed course of treatment, they stayed in the 50+ range that does not preclude engaging in substantial gainful activity. (See, e.g., A.R. at 272, 217-18, 194, 193.) Plaintiff's GAF scores did not decline until he abandoned his prescribed treatment program. (A.R. at 491, 484, 434-35.) Indeed, the lowest scores given by a credited source, the 44 and 40 that Dr. Leyva-Yapur assigned on April 1, 2004 and October 25, 2004, occurred when Plaintiff had been "off meds" for about six months and had skipped his July 2004 appointment, respectively. (Id. at 494, 491.)

The Court also disagrees with Plaintiff's argument that the ALJ "cherry picked" from Plaintiff's GAF scores. See Power, 2009 U.S. Dist LEXIS 19147, at *29. Rather, the ALJ noted without discussion the highest score of 60 and the lowest score of 38, the latter being from Dr. Scott, whose opinion the ALJ properly rejected, as discussed above. (See A.R. at 28, 31.) While the Court also agrees that "a discussion of Plaintiff's GAF scores would have made the ALJ's analysis more complete," such a discussion was not required in light of the other substantial evidence. Power, 2009 U.S. Dist LEXIS 19147, at *29.

Although the ALJ did not discuss Plaintiff's GAF scores explicitly, he discussed Plaintiff's treating psychiatrists'

18

findings.  The ALJ also considered Dr. Scott's opinion and Plaintiff's subjective complaints before rejecting both.  Thus, the omission of the GAF scores was permissible.

Plaintiff also claims the ALJ erred in finding that his testimony lacked credibility.  (Pl. Br. at 27-29.)  "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements."  Williams v. Barnhart, 211 Fed.Appx. 101, 104 (3d Cir. 2006).  "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  Schaudeck, 181 F.3d at 433; see also LaCorte v. Bowen, 678 F.Supp. 80, 83 (D.N.J. 1988).  The Court finds that the ALJ considered the entire record and properly articulated his basis for finding Plaintiff not credible, as discussed below.

Plaintiff contends that his activities of daily living were particularly and impermissibly used to attack his credibility regarding his inability to engage in substantial gainful activity.  (Pl. Br. at 27.)  However, the ALJ only used Plaintiff's daily activities as one factor in his credibility determination.  He cited various long-term plans beyond "daily living," including planning a long-distance bicycle trip and completing a move to San Francisco.  (A.R. at 32.)  The ALJ also noted Plaintiff's failure to seek mental health treatment for

19

prolonged periods, and stated that "the medical record supports
that he has responded well to psychotropic medication when he
decides to take it."  (A.R. at 32.)  See Snedeker v. Comm'r of
Soc. Sec., 244 Fed.Appx. 470, 474 (3d Cir. 2007) (where
claimant's complaints were undermined by his "not taking
prescribed medication and infrequently seeking medical treatment"
in addition to his "ability to adequately perform activities of
daily living").

The primary reason the ALJ rejected Plaintiff's credibility,
however, is because the record supports the conclusion that
Plaintiff chooses not to work.  (A.R. at 32.)  This is borne out
in Plaintiff's own testimony at his hearing, where he stated that
"if I had a full time, minimum wage job, I would exceed the
threshold at the VA for my medical treatment..." and that "common
sense indicates that a minimum wage job is going to really ruin
my life."  (A.R. at 633, 636.)  Moreover, the ALJ also noted
similar sentiments expressed by Plaintiff's VA medical providers,
who "referred to the claimant as unmotivated in participating in
vocational rehabilitation and his contentment with remaining
homeless."  (A.R. at 32; see A.R. at 339.)  Thus, decision that
Plaintiff's testimony lacked credibility is sufficiently
supported by evidence in the record.

Plaintiff finally argues that the ALJ failed to take
Plaintiff's reactions to stress into account when formulating his

RFC.  The Court disagrees.  Plaintiff relies on SSR 85-15, which
states that "any impairment-related limitations created by an
individual's response to demands of work, however, must be
reflected in the RFC assessment."  (Pl. Br. at 11.)  The Court
disagrees that the record demonstrates Plaintiff is unable to
deal with stress.  The ALJ pointed to many places in the record
where, though encountering stressful situations, Plaintiff dealt
with them reasonably and appropriately.  (A.R. at 27-31.)  Even
in one of the negative examples Plaintiff points to in his brief,
Plaintiff dealt with the stressful situation there in an
appropriate manner.  (See, e.g., Pl. Br. at 12, where Plaintiff
reached out to a fellow member of his support group when he was
angered by a woman who almost hit him with her car).  The ALJ
took Plaintiff's impairment and social difficulties into account
when he put nonexertional limitations into his RFC that limited
his contact with others.  Thus, the Court finds the ALJ was not
required to further incorporate stress into Plaintiff's RFC.

B.    Sufficiency of the ALJ's Determination that the
      Plaintiff Could Return to his Past Relevant Work

      Plaintiff also argues that the ALJ erred in determining that
he could return to his past relevant work ("PRW") as a newspaper
delivery person.  (Pl. Br. at 10.)  Specifically, Plaintiff
claims that the ALJ failed to address the possible sources of
stress in Plaintiff's PRW and whether Plaintiff's mental
impairment would interfere with his ability to perform that work.

21

(See id. at 10.)  Additionally, Plaintiff claims that the testimony of the vocational expert ("VE") regarding the requirements of a newspaper delivery person's job are not consistent with the United States Department of Labor's Dictionary of Occupational Titles ("DOT") description in DOT job number 292.363-010, and that the ALJ failed to elicit a reasonable explanation for the conflict, in accordance with SSR 00-4p.  (Id. at 21, 23.)

The Court disagrees.  Substantial evidence also supports the ALJ's finding that Plaintiff had the ability to do all of his previous job tasks in his past occupation as a newspaper delivery person.  (Id. at 35.)

The Court first disagrees that the ALJ failed to take into account possible sources of stress in Plaintiff's PRW when determining if Plaintiff could still perform it.  "A determination of [PRW] is a determination of the 'physical and mental demands of jobs a claimant has performed in the past.'" Burnett v. Comm'r of Soc. Sec., 220 F.3d 112 (3d Cir. 2000).  "To arrive at this determination, the ALJ must make specific findings about the physical and mental demands of the [PRW]." Alward v. Comm'r of Soc. Sec., No. 08-3373, 2009 WL 4798263, at *4-5 (D.N.J. Dec. 8, 2009); see also, Vega v. Comm'r of Soc. Sec., 358 Fed.Appx. 372, 376 (3d Cir. 2009).  Here, the ALJ's nonexertional limitations in Plaintiff's RFC sufficiently took into account

Plaintiff's social difficulties, in that they recommend he not do "close cooperative work with coworkers" and that he should "work independently of others."  (A.R. at 26.)  Then, with these limitations included in the hypothetical to the VE, the VE testified that Plaintiff could perform his PRW.  (Id. at 679.) Additionally, during the hearing, the ALJ elicited that in Plaintiff's newspaper delivery person job, he had  "really limited contact with" his supervisor.  (Id. at 672.)  Plaintiff also testified that the "primary job was driving and lifting big bundles of newspapers," as opposed to significant interaction with other individuals.  (Id. at 673.)  Even Plaintiff's attorney noted that Plaintiff's PRW was mostly performed in a "more isolated manner."  (Id. at 695.)

Though Plaintiff points to the VE's testimony on cross-examination that the job would involve "daily interactions with someone while picking up papers and again upon delivery," the record does not support the conclusion that Plaintiff is incapable of all social interactions in a workplace setting. (Pl. Br. at 11.)  Indeed, Plaintiff testified that he and his newspaper delivery person job supervisor "got along reasonably well."  (A.R. at 617.)  Moreover, the conclusion, supported by the record, that Plaintiff has not maintained regular work by choice undermines the claim that he could not perform his PRW

23

because of stress.  (A.R. at 32.)  Therefore, the Court finds that the ALJ and the VE properly explored Plaintiff's PRW.

Plaintiff also argues that the VE's testimony conflicts with the DOT description of Plaintiff's PRW as a newspaper delivery person.  Specifically, Plaintiff notes that the DOT job description 292.363-010, "Newspaper Delivery Driver," requires a General Educational Development ("GED") Reasoning level of 3. (Pl. Br. at 21.)  Reasoning level 3 involves applying "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form."  (Id. at 22.)  Plaintiff contends that because this is one level higher than Reasoning level 2, which involves applying "commonsense understanding to carry out **detailed** but uninvolved written or oral instructions," jobs that require a Reasoning level 3 must exceed Plaintiff's RFC, which precludes "more detailed instructions."  (Id. at 23.) Thus, the VE's opinion that Plaintiff could do this job must be in conflict with the DOT.  (Id.)  Because "[w]hen there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence," Plaintiff argues that this conflict was not sufficiently explored.  SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).  The Court does not find the two sources of evidence in conflict.  See Money v. Barnhart, 91 Fed.Appx. 210, 215 (3d Cir. 2004).

The ALJ posed a hypothetical to the VE wherein Plaintiff could "understand and remember simple to semi-skilled instructions, but would have difficulty with more detailed instructions." (A.R. at 678.)  The VE specifically noted the DOT does not address the skill level of possible instructions but that skill level should be "carried over into instructions," before testifying that the semi-skilled person in the posed hypothetical could perform the DOT Newspaper Delivery Driver job. (Id. at 678-79.)

Plaintiff's attorney also questioned the VE about why the DOT description of the "Newspaper Delivery Driver" position was classified as specific vocational preparation time ("SVP") of 4 and whether the required tasks might be of "a more detailed" kind that the RFC precluded.  (Id. at 695.)  In response, the VE explained that the driving tasks that made it an SVP 4 are "semi-skilled instructions," that should not change much over time. (Id.)  He did not testify that they are of the "more detailed" kind precluded by the RFC.  (Id.)  The VE, the ALJ, and Plaintiff's attorney all explored the skill and reasoning requirements of Plaintiff's PRW, both as described in the DOT and as it was previously performed, and whether they comported with Plaintiff's RFC.  The Court does not find the two to be in conflict.  The Court therefore concludes that the ALJ's determination, that Plaintiff could perform a full range of work

25

activity with nonexertional limitations and return to his past relevant work as a newspaper delivery person at all times from February 1, 1999 through the date of his decision, is supported by substantial evidence.  (See A.R. at 36.)

### CONCLUSION

For the reasons discussed supra, the Court will affirm the Commissioner's decision denying Plaintiff's claim.  The Court will issue an appropriate Order.


        s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge


**Dated:**    October 15, 2010